## SEKINOFF v. N. P. SEVERIN CO.
### No. 6439.

Circuit Court of Appeals, Ninth Circuit.

Nov. 13, 1931.

J. A. Hellenthal and Simon Hellenthal, both of Juneau, Alaska, for appellant.

H. L. Faulkner, of Juneau, Alaska, and R. P. Wisecarver, of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

Appellant brought suit in the District Court alleging that, while engaged at work as a common laborer for appellee, he received an injury to his left eye, which was occasioned by some foreign substance lodging therein. He alleged that he had in consequence suffered a total loss of sight in his left eye, and that the injury had in turn affected his right eye, causing a decrease of 50 per cent. in his earning capacity. He prayed that damages be awarded to him under the provisions of the Industrial Compensation Act of the Territory of Alaska.

Appellee answered denying all of the material allegations of appellant's complaint, and the cause proceeded to trial. Upon the conclusion of the taking of testimony on behalf of both parties, the trial judge, on the motion of appellee, instructed the jury to find against the plaintiff. This direction of the court was obeyed, and judgment entered accordingly.

The sole question presented on this appeal is whether there was sufficient evidence in support of appellant's case to entitle him to have the issues of fact submitted to the jury. Before discussing the law and the evidence which the court had to consider, it will be well to recall to mind the established rule under which a verdict may be directed. That rule is thus expressed in the decisions: First, if the evidence is undisputed as to the facts as to any determining issue in the case; second, if a conflict of evidence is present, but the evidence when fairly appraised is so conclusive as that it would impel the court, in the exercise of a reasonable discretion, to set aside a verdict to the contrary. Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; Kintyre Farmers' Co-op. Elevator Co. v. Midland Nat. Bank, 2 F. (2d) 348 (C. C. A. 8); Atchison, T. & S. F. Ry. Co. v. Wyer (C. C. A.) 8 F. (2d) 30; Isbell v. United States, 26 F. (2d) 24 (C. C. A. 8).

The Industrial Compensation Act of the Territory of Alaska (Session Laws of Alaska 1929, page 46) contains many provisions respecting compensation to be paid to injured and disabled employees. By it specific amounts are stated which the injured employee is to receive, graded variously from

that for total and permanent disability to specific sums for loss of body members. The amount for total and permanent disability of an unmarried person is $5400. The amount fixed for the loss of an eye in a case of an unmarried employee is $2,160. Then follows the provision under which appellant claimed his right to recover compensation. It reads as follows: "Whenever such employee receives an injury, arising out of and in the course of employment, as a result of which he or she is partially disabled, and the disability so received is such as to be permanent in character and such as not to come wholly within any of the specific cases for which provision is herein made, such employee shall be entitled to receive as compensation a sum which bears the same relation to the amount he or she would be entitled to receive hereunder if he or she were totally and permanently disabled that the loss of earning capacity of such employee, by reason of the accident, bears to the earning capacity such employee would have had had he or she not been injured, the amount to be paid in no case to exceed Seven Thousand Two Hundred Dollars ($7,200.-00)."

A further provision of the act requires that the employer shall furnish the injured employee reasonably necessary medical, surgical, and hospital treatment "as may be required by reason of the injury for a period not exceeding one year from and after the date of injury. * * *"

It will be observed that appellant did not sue for the fixed amount of $2,160 as for the loss of an eye, but rested his right to recover on the general provision quoted, under the claim that he had been permanently disabled to the extent of 50 per cent of his earning capacity. In giving the instruction for the verdict to be returned against the appellant, the trial judge was required to consider the evidence in its strongest light, as it favored the appellant's case.

The moving consideration which impelled the judge to direct the verdict to be rendered appears from the oral statement which he made; he concluded two things: First, that a cataract of the eye did not constitute a permanent and total loss of the eye; second, that there was not sufficient evidence from which the jury could form any reasonable estimate of what loss of earning capacity the appellant had suffered. Appellant's testimony at the trial in brief was, that while at work with a pick and shovel for appellee in about January, 1930, a piece of earth or rock two or three inches in diameter flew up and struck him in the eye; that a fellow employee helped him clean the eye, and took him to the superintendent of appellee, and who sent him to a doctor; that he could not see with his left eye at all; that theretofore he had had some trouble with his right eye; that after the accident he was treated by appellee's doctor, who gave him a prescription and told him to wash his eye, and that it would soon be better; that this doctor later told him that his eye was all right; that he went back to appellee asking for employment and was told that there was no place for him; that he still had trouble with the eye, and went to other physicians. It may be briefly stated that these physicians diagnosed his case as one of cataract, which the medical testimony showed could be helped by an operation, which operation would not be dangerous and was comparatively simple. Appellant stated that he was told that it would cost $250 to have that operation done.

There was testimony from medical men that removal of the cataract would not certainly restore full sight to the eye, but that vision would be helped after an operation by the man wearing glasses. It may be here remarked that there was a most decided conflict in the testimony, some of it, given by Dr. Pigg, being that he had treated the man, long before he began to work with appellee, for trouble with his eyes, and, at such prior time, a cataract was forming; that he treated him for both eyes, and that, after appellant's claimed accident, appellant had offered the doctor money if he would go into court and testify that he had never at any prior time treated him for eye trouble. All of this evidence, impressive as it may have been, showed only a conflict as against appellant's claim that he had received the injury at the time stated, coupled with his denial that he had been treated previously by Dr. Pigg, or that he had offered the latter money to give false testimony. The presence of a conflict in the evidence, serious as it was, still left the case in a condition that it was proper that the jury should pass upon the credibility of witnesses who furnished it. To permit recovery under the compensation act did not require that disability be measured by the amount per day that appellant had earned or would be able to earn in his alleged injured condition, although proof of the diminished earning power stated in dollars might be a guide to the jury in determining the percentage of earning capacity which had been lost.

While appellant did not state in his testimony as to what work he habitually engaged in, from the testimony he gave, it was reasonable to be inferred that his customary work was of that kind which he stated he was doing at the time he was injured, to wit, the work of a common laborer. If he did, as he asserted, receive the injury in the manner described, and even though the removal of the cataract might restore a per cent. of his former vision, nevertheless, there would be a permanent loss of some degree in sight of the eye. The jury, in its best judgment, would be entitled to estimate that loss, and to fix the damage within the scale which the act furnished.

Counsel for appellee insists that it was the duty of appellant to first endeavor to have himself cured, or at least to demand of appellee that they furnish him with proper medical service to have the cataract removed from the eye, before bringing suit. Dr. Pigg was admittedly acting for appellee when, in January, 1930, he treated the employee's eye. It would appear to have been the duty of appellee, through its medical officer, to tender to the employee such medical attention as the case might recommend, failing to do which, it would not seem that the requirement that he should make a specific demand should not be cast upon appellant. A fair inference from the testimony is that any such demand would have been refused because of the fact that appellee has denied that appellant received the injury while in its employ. It made that denial in answer to the complaint, and it seems quite clear that it has always maintained that position, because of Dr. Pigg's testimony that the man had had a cataract when he treated him long before he entered the employ of appellee. In many suits involving claims for damages for personal injuries, there are elements to be considered which are not clearly established by specific testimony, but which, from the facts and circumstances disclosed, the jury is called upon to use its reasonable judgment.

The jury in this case, under the evidence, might have found the issues entirely in favor of appellee; it might have found some degree of permanent injury and loss of earning power occasioned by the damage to the eye. It would have been proper to instruct the jury that the fact that if an operation on the eye, if of a simple nature and unattended by any risk to life as the physicians testified it would have been, would reduce the permanent disability of appellant, that fact should be considered, and recovery, if any, be regulated accordingly.

In our opinion, the evidence as it stood at the time the court directed the verdict for appellee was not conclusive against the appellant, and it was error for the court to peremptorily require the jury to return the verdict which was entered.

Judgment is reversed.