**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5060

LARRY CHIN, a/k/a Dallas,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-94-361-A)

Argued: February 1, 1996

Decided: April 30, 1996

Before WIDENER and MURNAGHAN, Circuit Judges, and
DOUMAR, United States District Judge for the Eastern District
of Virginia, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded in part by published
opinion. Judge Murnaghan wrote the opinion, in which Judge Wid-
ener and Judge Doumar joined.

_____

**COUNSEL**

**ARGUED:** Charles Lewis King, CRUM & KING, Arlington, Vir-
ginia, for Appellant. John Patrick Rowley, III, Assistant United States
Attorney, UNITED STATES ATTORNEY'S OFFICE, Alexandria,
Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States

Attorney, Lawrence J. Leiser, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Larry Chin ("Chin"), defendant-appellant, has appealed his conviction for the distribution of heroin and other drug-related crimes. For the following reasons, we, with one exception, have concluded to affirm.

I.

Chin was one of several individuals arrested as the result of a Drug Enforcement Agency ("DEA") undercover operation run out of an automotive repair shop ("the shop") located in Arlington, Virginia. The owner of the shop volunteered his premises as a place to run an undercover operation because of his concern with illegal drug activities in his community. Using the shop as a front, special undercover agents ("agents") posed as criminals offering "green cards" in exchange for heroin, cocaine, crack, weapons, or cash.[1] The agents wired the shop for sound and video allowing them to record multiple illegal transactions involving Chin or his colleagues. When Chin was tried, portions of the tapes were played to the jury and transcripts were offered as evidence of illegal activities as well as accounts by witnesses describing the content of the tapes. Most of the following meetings were recorded by video or audio.

An agent first met with Simon Chow ("Chow"), Chin's friend and colleague, in February of 1993 at the shop. Chow and the agent discussed exchanging green cards for cash or heroin. A heroin deal between Chin and the agent grew out of that initial meeting.

_____

[1] Alien registration cards, which are proof of legal status for aliens, are commonly referred to as "green cards."

2

At a meeting in the shop in June 1993, Chow was supposed to deliver a sample of heroin to the DEA agent. He was unable to deliver the sample because he had allegedly lost it in transit from New York. In early July, however, Chow agreed to sell $90,000 worth of heroin to the agent. He also provided a sample that was 90% pure heroin.

Later in July, Chin met with an agent at the shop for the first time. At that meeting, Chin expressed his frustrations with delays in the heroin deal. He told an agent that he had "been in the heroin business for a long, long, time," and that "his people," young people, were in town and they "were trigger-happy." He emphasized that they "had nothing to live for . . . [and at] [t]he first sight of problems, they go for the trigger. So don't delay much longer." Chin then threatened to kill the owner of the shop if anything went wrong with the deal. At that same meeting, Chin discussed the mechanics of the heroin sale and decided on a date, July 27, 1993, at 9:30 a.m. The parties would exchange the money at the shop and the heroin at a separate location, a restaurant in Washington, D.C.

The transaction occurred as planned. Chin was video-taped receiving $67,000 in cash at the shop in exchange for 700 grams of heroin delivered to agents at a restaurant in Washington, D.C.[2] While waiting for his people to deliver the heroin at the restaurant, Chin pulled out a 40 caliber handgun and displayed it to an agent. Chin also discussed with an agent how much he would charge for murder-for-hire and to dispose of the "garbage," meaning the body. He suggested that his people had been responsible for the murder of a man whose picture was on a missing person poster at the shop, and stated that the body had been disposed of at the Andrews Air Force Base.

When the heroin arrived at the restaurant in Washington, D.C., it was given to agents there. At trial, one agent testified that the 700 grams of heroin received from Chin's "people," two juveniles, arrived in a cookie tin containing a wrapped package of heroin. The wrapping bore the distinctive symbol, a "double uoglobe," of the Shan Army, which controls the production and distribution of a vast majority of

_____

[2] The sale price of $90,000, plus a late charge of $3,000, was reduced by $26,000 which Chow owed the undercover agent for green cards and stolen cigarettes.

the heroin produced in the Far East. The "double uoglobe brand" is recognized world-wide as one of the best and most pure brands of heroin. The agent, a veteran DEA agent and former DEA chemist, testified that the distinctive packaging as well as the results from the DEA lab verifying that the heroin was 85% pure indicated that the heroin came from the Shan Army in Southeast Asia and not the United States.

Chin was charged in a six-count indictment with various drug-related crimes. Count I alleged a conspiracy to distribute heroin in violation of 21 U.S.C. § 846; Count II alleged distribution of heroin in violation of 21 U.S.C. § 841; count III alleged the use of juveniles in the distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 861(a)(1); count IV alleged carrying a firearm during drug trafficking in violation of 18 U.S.C. § 924(c)(1); count V alleged a continuing criminal enterprise in violation of 21 U.S.C. § 848(a); and count VI alleged importation of heroin in violation of 21 U.S.C. §§ 952(a), 960(b)(2). The government charged Chin as both a principal and an aider and abettor on counts II, III, and VI under 18 U.S.C. § 2.

At the close of the government's case, Chin made a motion for a directed verdict on the importation count. The district court denied the motion reasoning that the importation charge could go to the jury on the theory that the purity and packaging demonstrated that Chin aided and abetted in the importation of heroin.

A jury found Chin guilty of all six counts of alleged illegal activities. The trial judge sentenced Chin to 264 months in prison on Counts II, III, V, and VI, and 60 consecutive months on count IV. The trial judge dismissed and vacated count I for conspiracy because it was a lesser included offense of Count V, a continuing criminal enterprise.[3]

_____

[3] The dismissal of count I would be subject to reinstatement if the conviction for engaging in a continuing criminal enterprise were to be reversed.

4

II.

Chin has challenged his convictions on two different grounds. First, he has contended that the admission into evidence of testimony describing his discussion about murder-for-hire and "his people's" responsibility for a particular murder violated Rules 404(b) and 403 of the Federal Rules of Evidence. Second, he has argued that the evidence establishing that he imported heroin was so weak that the district judge erred by not granting him a directed verdict of not guilty on the importation charge.

A. Admissibility of Murder Testimony
under Rules 404(b) and 403

We generally review the district court's decision to admit evidence of bad acts under Rules 404(b) and 403 for abuse of discretion. Cook v. American Steamship Co., 53 F.2d 733, 742 (6th Cir. 1995); United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991). Rule 404(b) decisions are not reversed unless they are "arbitrary and irrational." United States v. Powers, 59 F.3d 1460, 1464-65 (4th Cir. 1995), cert. denied, ___ U.S. ___, 116 S. Ct. 784 (1996). Where a party, however, fails to object to the admission of evidence, Rule 103(d) of the Federal Rules of Evidence requires that we review the admission for plain error. Cook, 53 F.3d at 742; United States v. Brown, 921 F.2d 1304, 1308 n.4 (D.C. Cir. 1990); Fed.R.Evid. 103(d).

As previously explained, the jury watched video tapes of the drug deal as well as listened to audio recordings. Transcripts of the audio recordings were admitted into evidence for the jury to review. In addition to the transcripts, an agent testified as to what the tapes contained. Chin has contended that certain testimony of the agent summarizing and explaining what transpired in the tape played to the jury violated Rules 404(b) and 403 of the Federal Rules of Evidence. In the challenged testimony the agent related what was occurring on the tapes during the drug transaction. At one point, the agent described what he and Chin were then discussing. He testified that Chin had indicated that he engaged in murder-for-hire and claimed that "his people" were responsible for a particular murder.

Chin's first contention is that Rule 404(b)'s exclusion of evidence of other crimes introduced to demonstrate bad character precluded the

5

testimony.**4** Second, even if the testimony was admissible under one of Rule 404(b)'s limited exceptions, he has argued that the testimony violated Rule 403's mandate that its probative value should not be outweighed by unfair prejudice.**5**

Chin failed to preserve properly his objection to the contested testimony by making a "timely objection . . . stating the specific ground of the objection" as required by the Federal Rules of Evidence. Fed.R.Evid. 103(a)(1). When the prosecutor asked if the agent testifying knew the name of the individual whom Chin's people had allegedly killed, the district judge interrupted and asked "[w]hat difference does it make?" Only then did Chin's counsel object on the grounds of relevance. When the prosecutor explained the relevance and continued with his questioning, Chin's counsel did not renew his objection or raise any other grounds for his objection. Thus, Chin's counsel never obtained a ruling from the district judge on whether the testimony was relevant, much less admissible under Rules 404(b) and 403. We, therefore, review the admission of the murder testimony for plain error.

_____

**4** Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**5** Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

1. Rule 404(b)

We find that there was no plain error as to Rule 404(b) because Rule 404(b)'s exclusion of bad acts does not pertain to the contested testimony. The majority of circuits have held that Rule 404(b) applies only to limits on the admission of other acts extrinsic to the one charged. Under that rule, acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence. United States v. Barnes, 49 F.3d 1144, 1149 (6th Cir. 1995); United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir.), cert. denied, ___ U.S. ___, 114 S. Ct. 333 (1993); United States v. Allen , 960 F.2d 1055, 1058 (D.C. Cir.) (per curiam), cert. denied, 506 U.S. 881 (1992); United States v. Roberts, 933 F.2d 517, 520 (7th Cir. 1991); United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990); United States v. Foster, 889 F.2d 1049, 1054-55 (11th Cir. 1989); United States v. Towne, 870 F.2d 880, 886 (2d Cir.), cert. denied, 490 U.S. 1101 (1989). While the Fourth Circuit has not explicitly stated, as a general matter, that Rule 404(b) does not apply to intrinsic acts, we have indicated that we agree with much of the reasoning behind the rule. See, e.g., United States v. Kennedy, 32 F.2d 876 (4th Cir. 1994) (holding that Rule 404(b) is not applicable to evidence of crimes that arose out of the same series of transactions as the charged offense or that are necessary to complete story of the charged crime); United States v. Dozie, 27 F.3d 95, 96-97 (4th Cir. 1994) (per curiam) (holding that Rule 404(b) was not applicable to evidence of dismissed counts, which had alleged the filing of fraudulent insurance claims, that fell within same time period of charged conspiracy to commit mail fraud); see also Fed.R.Evid. 404(b) advisory committee's note on a 1991 amendment (recognizing distinction between intrinsic and extrinsic evidence). We agree with the other circuits that where testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible. Allen , 960 F.2d at 1058.

Other criminal acts are intrinsic when they are "inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." Lambert, 995 F.2d at 1007. The testimony about contract murder fits into the intrinsic category of evidence. The statements regarding murder were made during an exchange of heroin for cash. Thus, it was an intrinsic part of a drug deal and the witness' account of the context and circum-

7

stances surrounding the deal. <u>See</u>, <u>e.g.</u>, <u>Allen</u>, 960 F.2d at 1058. Indeed, Chin does not object to the transcript of his discussion with the agent. He only objects to the agent's testimony describing the conversation.

Furthermore, the testimony was not admitted solely to demonstrate Chin's bad character. Killing people was an integral part of Chin's criminal enterprise, including his heroin business, and the threat of killing viewed as necessary to ensure deals were completed without problems arising. As one of the agents testified, Chin's prior threat to kill the shop owner was in keeping with the nature of the heroin business. In summary, the challenged testimony emphasized the violent and dangerous context of a heroin deal, and was inextricably intertwined with Chin's crime of selling heroin and conducting an ongoing criminal enterprise. Thus, Rule 404(b) does not apply to the challenged testimony.

2. <u>Rule 403</u>

Evidence admissible under Rule 404(b) must still meet Rule 403's requirement that its prejudicial value not outweigh its probative value. <u>Lambert</u>, 995 F.2d at 1008. Because of Chin's failure to object on Rule 403 grounds, we review the admission of the testimony for plain error. Evidence of a murder not charged is extremely prejudicial. However, as explained, the murder demonstrated the extent to which Chin was willing to go, or at least threaten, in order to ensure that the heroin deal and any future deals went smoothly. The murder business Chin implied was part-and-parcel of his criminal enterprise. Prior testimony regarding Chin's threat to kill the shop owner bolstered the relevance of murder and murder threats to Chin's heroin business. Furthermore, any error was at most harmless error. The evidence of Chin's guilt provided in government videotapes and audio recordings was overwhelming. For the foregoing reasons, we find no plain error.**6**

_____

**6** At oral argument, Chin's counsel also argued that the agent's testimony misdescribed what was actually in the transcripts. The transcripts were in evidence, thus the jury could judge for itself if there were any discrepancies. Furthermore, counsel made no objections on that basis at trial.

8

B. Importation Count

Chin also has argued that there was insufficient evidence to convict him as an aider and abettor in the importation of heroin. The court must uphold a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

Chin was charged as both a principal and aider and abettor in a scheme to import heroin. After Chin moved for a directed verdict on the importation count, the trial judge ruled that the charge could go to the jury only on the theory that Chin aided and abetted in the importation of heroin. In order to prove aiding and abetting the importation of drugs, the government must demonstrate (1) that Chin associated himself with the importation venture; and (2) that he sought by his actions to make it succeed. United States v. Richeson, 825 F.2d 17, 21 (4th Cir. 1987). The government may demonstrate association by proof of participation at some stage accompanied by knowledge of the result and intent to bring about that result. Id. The only evidence that Chin aided and abetted the importation of heroin was that the heroin he sold was imported and still had its original purity, not having yet been diluted for sale on the streets. That evidence consisted of (1) the purity of heroin; and (2) the heroin's packaging bearing the "double uoglobe" symbol of the Shan Army. At oral argument, the government essentially conceded the insufficiency of its evidence to prove that Chin aided and abetted the importation of heroin beyond a reasonable doubt. We agree and find that the evidence was insufficient. Standing alone, the purity of heroin and packaging indicating a foreign source country are simply insufficient to prove importation or aiding and abetting importation.

Nonetheless, the government has contended that the sentence would not be lessened by a striking of the importation count. We are not convinced that the sentence should not be lessened and, consequently, remand for resentencing. The district court may or may not

9

conclude that the vacation of the conviction as to Count VI warrants a reduction of Chin's sentence.

Accordingly, the judgment is

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED IN PART</u>.

10