**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5414

JACOB E. JOHNSON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-94-248-DKC)

Submitted: January 28, 1997

Decided: April 17, 1997

Before HALL, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

M. Brooke Murdock, THIEBOLT, RYAN, MARTIN & FERGU-
SON, Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United
States Attorney, Brent J. Gurney, Assistant United States Attorney,
Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Jacob E. Johnson was convicted of conspiracy to commit credit card fraud, 18 U.S.C. § 1029(b)(2) (West Supp. 1996), and related substantive offenses. He appeals his conviction and his 105-month sentence, contending that the district court abused its discretion in admitting certain evidence, clearly erred in determining the amount of loss at sentencing, and erred in departing upward from the guideline range rather than departing downward as he requested. Johnson also seeks leave to file a pro se supplemental brief in which he contests the district court's denial of his motion to suppress evidence seized from his father's house under the first of two search warrants issued on the day of his arrest. We grant leave to file the supplemental brief and affirm.

From 1993 until his arrest in June 1994, Johnson bought lost and stolen credit cards and stolen identification such as driver's licenses in Washington, D.C. He obtained viable credit card numbers and altered the lost and stolen cards using credit card embossers stolen from hospitals. Various women who worked for him used the fraudulent credit cards to obtain cash advances at banks in return for a share of the proceeds. Those who were drug users also received drugs.

On February 24, 1994, Johnson drove his green Cadillac from New York to his father's house in Clinton, Maryland. Yolanda Gross and Pamela Richardson were in the car but there was an altercation along the way and Johnson put Gross out of the car on the New Jersey Turnpike. She was detained by police after she initially told them her own vehicle had been carjacked and she was found to be carrying a small quantity of drugs. Gross then told police that Johnson had two kilograms of cocaine in his car in lockboxes, as well as credit cards and an embossing machine, which he was taking to his father's house. The New Jersey police passed this information on to Detective Musselman of the Prince George County police narcotics enforcement division in Maryland and the Secret Service in Washington.

Detective Musselman dispatched police officers Cavanaugh and Bartlett in an unmarked vehicle to Johnson's father's house at 4548

2

Nantahala Drive. They found the green Cadillac already there. Johnson and Richardson soon emerged, got into the car and drove away, followed by the officers. When Johnson realized he was being followed, he fled, but was apprehended after he ran up on a curb and blew out all four tires. Cavanaugh handcuffed Johnson, got Johnson's permission to search the car, and retrieved a cut-up credit card from the floor of the back seat. Bartlett spoke to Richardson, who verified that she and Johnson had just come from New York and that a woman had been put out of the car in New Jersey. Other officers arrived who checked Johnson's name and found that he had an open arrest warrant for a probation violation. The warrant had recently been withdrawn; however, the sheriff's department computer records still showed it as open. Johnson was taken into custody temporarily, then released.

While these events were occurring, Musselman received a call from Detective Flynn of the Bladensburg, Maryland, Police Department. Flynn was part of a Secret Service task force in Washington. Flynn knew that Gross had provided information to task force members about Johnson's involvement in credit card fraud and counterfeiting credit cards. After hearing from Flynn, Musselman decided that Gross could be considered reliable. He applied for a warrant to search the house on Nantahala Drive for narcotics. The warrant application erroneously stated that Gross had supplied information to the Secret Service which led to the arrest in Boston of persons involved in counterfeiting credit cards. Musselman later testified that he got this information from Flynn.

Flynn participated in the search of the house under the first warrant. He testified that a bag containing the embossing machine and a stack of credit cards was found in the hall leading to the garage. Flynn then applied for a second warrant authorizing a search for evidence of credit card fraud. In preparing his warrant application, Flynn reviewed Musselman's application for the first warrant, but he did not include the erroneous information about Gross in his own warrant.

Johnson was arrested some months later and charged with the instant offenses. Gross and Doris Borges, who both worked for Johnson, testified at his trial. Gross, who was romantically involved with Johnson, said that Johnson paid the other women one-third of the money they got from the bank and supplied them with drugs if they

3

were drug users. She said she used crack cocaine during her association with Johnson, and several times traveled to New York with him, where he obtained cocaine. Overruling defense objections, the court permitted Gross to testify that Johnson gave her cocaine every day. Borges provided similar evidence. Johnson argues that his drug distribution was entirely separate from his credit card conspiracy, and testimony concerning it was not admissible. He also contends that, even if such testimony was admissible under Federal Rule of Evidence 404(b), it should have been excluded under Rule 403 because its prejudicial value exceeded its probative value.

Evidence of other crimes committed by the defendant should be excluded at trial, with certain exceptions. Fed. R. Evid. 404(b). However, acts intrinsic to the alleged crime are not excludable under Rule 404(b). United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996). Other criminal acts are intrinsic to the charged offense if they are inextricably intertwined with it, if they are part of a single criminal incident, or if the other acts are preliminary to the charged offense. Id. at 88. Because Johnson paid some of his workers in drugs, his distributions were a part of the fraud conspiracy. Therefore, the testimony of Gross and Borges on this point was properly admitted and was not overly prejudicial.

At Johnson's sentencing, the district court independently determined the loss to be approximately $361,800, and made a 9-level enhancement under USSG § 2F1.1(b)(1).* James Bland, a bank investigator and member of the task force on credit card fraud, testified that verified losses of $101,627 had resulted from fraudulent use of more than fifty credit cards seized from Johnson's father's house on Nantahala Drive in Clinton, Maryland, in February 1994. Johnson argued that this amount should be treated as the loss resulting from the offense. Had the district court agreed, Johnson would have received a 6-level increase.

Instead, the district court estimated the amount of money fraudulently obtained based on the testimony of Gross and Borges as to how many times a week they got cash advances from banks and what the

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1994).

4

average amounts were. The court found Gross and Borges to be credible witnesses, in part because some of their testimony was supported by independent evidence such as the stolen embossers which were seized by police and known losses which corresponded with the amounts Borges said she was obtaining. Johnson argues that Gross and Borges were not credible because they used drugs during the conspiracy, and that the court should have considered only the losses resulting from the seized credit cards. He also suggests that he was penalized for going to trial, pointing out that the loss calculation used in sentencing both Gross and Borges was much lower than the amount used in sentencing him.

The amount of loss is generally a factual question reviewed for clear error. United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995). Each case is decided on its own facts. United States v. Mancuso, 42 F.3d 836, 849 (4th Cir. 1994). This Court does not review the factfinder's estimation of the credibility of witnesses. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Given that the district court found Gross and Borges credible, their evidence provided a basis for the court's calculation of the total actual loss. The court's finding is thus not clearly erroneous. While Gross and Borges may have been sentenced using a loss amount which was lower, their sentences are not under review in this case. Johnson has not demonstrated that the court clearly erred in determining the loss attributable to him.

The district court departed from criminal history category V to category VI pursuant to USSG § 4A1.3, p.s., finding that Johnson's two prior federal convictions for credit card fraud suggested a strong likelihood that he would commit the same crime again. A criminal history category which significantly underrepresents the defendant's past criminal conduct or the likelihood that he will commit other crimes is an "encouraged" factor for departure. See Koon v. United States, ___ U.S. ___, 64 U.S.L.W. 4512, 4517 (U.S. June 13, 1996) (Nos. 94-1664/8842) (district court must consider whether guidelines encourage or discourage departure for factor which is potential basis for departure in a given case); United States v. Rybicki, 96 F.3d 754, 757-58 (4th Cir. 1996).

Even when an encouraged factor is present, the sentencing court must decide whether it is already adequately accounted for in the

5

applicable guidelines. This decision is reviewed de novo. Koon, 64 U.S.L.W. at 4517; Rybicki, 96 F.3d at 758. In Johnson's case, the district court decided that the criminal history points Johnson received for his two prior federal sentences (of six years and nine years) for credit card fraud did not account sufficiently for the fact that he was undeterred by either prior sentence from continuing to commit the identical offense and thus did not reflect the likelihood that he would commit other crimes in the future. Under USSG § 4A1.3(b), prior sentences of substantially more than a year may be the basis for a departure. Consequently, the district court did not err in finding that a departure was possible on this ground.

However, the court must decide whether a departure is warranted in the particular case, and this decision is reviewed for abuse of discretion. Rybicki, 96 F.3d at 758. We find that the court did not abuse its discretion in departing from category V to category VI (the equivalent of adding two criminal history points) because of the likelihood of recidivism. Despite having several years of college training and the ability to earn an honest living, Johnson has shown a clear preference for stealing as a way of supporting himself. There is no indication in the materials presented on appeal that his attitude has changed. The court's analogy to a career offender is apt.

The court also departed upward by one level under USSG § 5K2.0, p.s., on the ground that Johnson's regular distribution of drugs as part payment to some of his workers was a factor not accounted for under the fraud guideline, and therefore was a potential basis for an upward departure. This is an "unmentioned" factor, and thus one which may justify a departure only rarely, when the "`structure and theory of [the] relevant individual guidelines and the Guidelines taken as a whole' indicate that they take a case out of the applicable guideline's heartland." Rybicki, 96 F.3d at 758 (citing Koon). Because drug distribution is not usually an integral part of credit card fraud, the district court did not abuse its discretion in finding that this factor made Johnson's case one in which the applicable guideline was inadequate to punish the offense.

The court declined to depart downward, even if it had authority to do so, to offset the consecutive sentence Johnson expected to receive when his parole was revoked because of the instant offense. The

6

court's decision is not reviewable on appeal. <u>United States v. Bayerle</u>, 898 F.2d 28, 31 (4th Cir.), <u>cert. denied</u>, 498 U.S. 819 (1990).

In his pro se supplemental brief, Johnson challenges the district court's denial of his motion to suppress evidence seized from his green Cadillac and his father's house on the day he was arrested. He contends that the affidavit filed by Detective Musselman in support of the first warrant for a search of his father's house included information which was false, that is, that Gross was a reliable informant because she had previously provided information leading to arrests in Boston. At the suppression hearing, the government agreed that Gross had not assisted with arrests in Boston. Johnson contends that the false information was included to mislead the magistrate either intentionally or with reckless disregard for the truth. A defendant may attack a facially sufficient affidavit by making a preliminary showing that the affiant included false information intentionally or with reckless disregard and that the false information was essential to the probable cause determination. <u>Franks v. Delaware</u>, 438 U.S. 154, 156 (1978). If the district court finds that the affiant has committed material perjury or recklessness, the warrant must be voided and evidence gathered pursuant to the warrant must be excluded. <u>Id.</u> Johnson alleges that, in its ruling denying his suppression motion, the district court made factual errors and failed to make a finding concerning reckless disregard of the truth.

Detective Flynn testified at the suppression hearing that he believed Musselman had confused information about Gross's assistance to the Secret Service with information supplied to him at the same time about Johnson's criminal record. Johnson had been arrested in Boston in 1981. The district court determined that Musselman had valid reasons for believing Gross to be a reliable source of information and that the inaccurate information in his warrant application was neither deliberately included to mislead nor critical to the probable cause determination. The court's finding is reviewed for clear error. <u>United States v. Jones</u>, 913 F.2d 174, 176 (4th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1052 (1991).

The district court found that Musselman did not deliberately falsify his affidavit and that it was "reasonable to see, or guess, how all this happened" given the speed with which events unfolded. The court

7

also found that the police had probable cause to search the house for narcotics based on Gross' information because her information was specific and some of it had been verified. The court held that the police could reasonably infer that Johnson had taken the cocaine into the house. Although, as Johnson points out, the court did not specifically find that Musselman was not in reckless disregard of the truth, its finding encompasses that conclusion.

Johnson questions the court's finding that both warrant applications were submitted to the same judge; however, the issue is not material. Johnson also alleges that the court erred in stating that the lockboxes were found in the Cadillac. The transcript of the hearing does not disclose whether or where the lockboxes were found. Even assuming the court was in error on this point, its ultimate finding was not clearly erroneous.

The convictions and sentence are accordingly affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED