Filed: June 3, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-4012
(CR-96-55)

United States of America,

Plaintiff - Appellee,

versus

Lankford L. Carroll,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed May 28, 1997, as follows:

On page 4, second full paragraph, line 1 -- the sentence is corrected to begin: "Mr. Carroll contends that the district court violated . . . ."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4012

LANKFORD L. CARROLL,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
N. Carlton Tilley, Jr., District Judge.
(CR-96-55)

Argued: May 9, 1997

Decided: May 28, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge,
and COPENHAVER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Stuart Bruce, Acting Federal Public Defender,
Greensboro, North Carolina, for Appellant. Michael Francis Joseph,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney,
Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Lankford Carroll challenges his convictions for two
counts of mailing threats, in violation of 18 U.S.C. § 876, and the sen-
tences he received for those convictions. We affirm.

I.

On July 29, 1995, Gail Carroll, wife of appellant Lankford Carroll,
had sexual relations with her former employer Robert Rash (who was
also married) at a motel in Greensboro, North Carolina. When appel-
lant, who was secretly taping his wife's phone conversations, learned
of his wife's illicit liaisons with Mr. Rash a few days later, he suf-
fered considerable mental anguish and became violent. See J.A. at 91,
164-65. After beating Ms. Carroll, Mr. Carroll forced his wife to
reveal Mr. Rash's name and pager number. See id. at 93-94.

Over the next week, Mr. Carroll called Mr. Rash's pager more than
one hundred times, each time leaving the numerical message "29,"
which was the date on which Mr. Rash and Ms. Carroll had engaged
in their lascivious behavior. See id. at 176. Thereafter, appellant sent
a series of seven letters and postcards addressed to Ms. Rash and to
Mr. Rash. While some of these letters were apparently sent to Ms.
Rash with the intent of informing her of her husband's affair and
seeking to commiserate with her over their spouses' infidelity, two of
the letters included threatening comments directed at Mr. Rash.
Appellant sent the first such letter, which was written in his own
handwriting and bore his own return address, to Mr. Rash on August
24, 1995. The letter read as follows:

> I think about you every day and night.
>
> Here is a picture of the <u>Queen</u> you took to bed. So you
> didn't get much. But what you and Gail did cost me my <u>son</u>.

2

> That's the bad part. I know that doesn't bother you. You cal-
> led Gail after Sat. July 29 at Big Lots from your car with
> your son in the car. You wanted to make another date. You
> said I'm going to have some valume (sic valium) and vita-
> mins for our next date. So you don't care about your son.
> You are a piece of shit. It took me a year to get all my tapes
> on her so when I get my loose end down here, as God is my
> witness, I will be in Greensboro to take care of the matter.
> I got your car license. I even got a picture of you. I don't
> want to make a mistake, only you. Thou shall not commit
> adultery. Thou shall not kill. In my mind you committed
> adultery with my wife, Gail. Now I have to sin for what you
> 2 did.

Id. at 260. Mr. Carroll enclosed in the letter a photograph of his wife dressed as a go-go dancer, which was taken when Ms. Carroll was nineteen years old.

Four days later, Mr. Carroll mailed a second letter, again written in his own handwriting, which read:

> The Holy Bible, King James version, Deuteronomy 22,
> the book of the Old Testament tells me what I have to do.
> It reads, if a man be found lying with a woman married to
> an husband, then they shall both of them die. Both the man
> that lay with the woman and the woman, so shalt thou put
> away evil from Israel.

> So Robert Rash we will meet very soon. I know what you
> look like and what you drive and where you live. So you
> will know who I am I will give you some clues. I will be
> dressed in a long, black coat. When I walk up to you and
> open my coat, it will be too late. But then you will know
> who I am. It will be on the twenty-nine day of any month.
> You know why I picked the 29? That's the day you took my
> wife in a motel. I got plenty of time. Take care of this.
> Maybe then I will get a good night's sleep and peace of
> mind. Be seeing only you soon.

J.A. at 134, 267.

3

Appellant was charged with and convicted of two counts of mailing threats as a result of sending these two letters to the Rashes. Mr. Carroll now appeals those convictions, claiming that the district court abused its discretion by admitting certain evidence of uncharged bad acts, evidence whose tendency to prejudice the jury, he contends, outweighed its probativeness. Mr. Carroll also claims that the district court abused its discretion by upwardly departing at sentencing based on Mr. Carroll's extreme conduct. We address each of these claims in turn.

II.

Mr. Carroll contends that the district court violated Rules 403 and 404(b) of the Federal Rules of Evidence by allowing the prosecution to present evidence that he secretly recorded his wife's phone conversations and then beat her upon learning of the affair. We disagree.

Mr. Carroll correctly asserts that Rule 404(b) generally renders evidence of prior bad acts inadmissible for purposes of showing the accused's bad character and thereby proving that he committed other acts in conformity therewith. See Fed. R. Evid. 404(b). However, as this court has held, "acts intrinsic to the crimes charged do not fall under Rule 404(b)'s limitations on admissible evidence." United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996). A defendant's uncharged bad acts are deemed intrinsic to the charged conduct when they are "inextricably intertwined" or are "necessary preliminaries" to the charged conduct. See id. Mr. Carroll's uncharged bad acts in this case easily fall within this definition. Mr. Carroll's surreptitious taping of his wife's phone calls, beating his wife to make her confess the name of her adulterous lover, calling Mr. Rash's pager numerous times, and sending numerous letters to the Rashes, were all acts in the same course of conduct leading to Mr. Carroll's unlawful mailing of threats to Mr. Rash. The challenged evidence was necessary to fully "tell the story" of the crimes with which Mr. Carroll was charged; without this evidence a jury would not have fully understood the meaning of Mr. Carroll's letters or his intent in writing them. Consequently, the district court did not violate Rule 404(b) by allowing its admission.

We further hold that the district court did not err under Rule 403 when it determined that the challenged evidence was not unduly prej-

4

udicial. Although we recognize that evidence showing that a defendant beat his wife has the potential to adversely affect the jury's view of the defendant, the defendant's domestic violence here was closely tied to the conduct for which he was on trial, and was probative of his intent in sending Mr. Rash the threatening letters. Accordingly, the district court did not err in holding that the probative value of this evidence outweighed its tendency to prejudice. From this, it follows a fortiori that the considerably less prejudicial evidence that the defendant secretly taped his wife's phone conversations was also properly admitted.

III.

The appellant also urges us to hold that Mr. Carroll's conduct in sending the threatening letters to the Rashes was insufficient to justify the court's upward departure for extreme conduct. However, given that "extreme conduct" is an "encouraged" basis for departure under the Sentencing Guidelines, see U.S.S.G. § 5K2.8, the district court had the authority to depart provided that Mr. Carroll's conduct was not adequately taken into account by the applicable guideline. See United States v. Rybicki, 96 F.3d 754, 757 (4th Cir. 1996). After a review of the record in this case, we agree with the district court that Mr. Carroll's conduct in the course of mailing the threats to the Rashes -- including his vivid letter promises to exact biblical revenge, his decision to threaten to kill Mr. Rash on a particular date so that Mr. Rash would suffer awaiting that date, and his numerous phone calls to Mr. Rash's pager leaving the numerical message "29" -- was indeed atypical and not taken into account in the guidelines. Consequently, we hold that the district court did not err in choosing to engage in an upward departure on these grounds.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED