**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4768

JAMES RUSSELL PURNELL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4857

ANDRE EDWIN ALLEN,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CR-95-405-CCB)

Argued: May 5, 1998

Decided: September 16, 1998

Before WILKINSON, Chief Judge, and ERVIN
and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Antonio Gioia, Baltimore, Maryland, for Appellant Allen; Richard Christopher Bittner, BITTNER & DEMYAN, Glen Burnie, Maryland, for Appellant Purnell. Thomas Michael DiBiagio, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After a joint trial, Andre Allen was convicted of three counts of bank robbery in violation of 18 U.S.C. § 2113(a), (f) (1994) and three counts of using and carrying a firearm in violation of 18 U.S.C. § 924(c) (1994), and James Purnell was convicted of one count of bank robbery in violation of 18 U.S.C. § 2113(a), (f) (1994) and one count of using and carrying a firearm in violation of 18 U.S.C. § 924(c) (1994). Allen and Purnell now appeal those convictions, contending that the trial court erred in denying their motions to sever their trials and in admitting evidence of other crimes. Allen separately contends that the trial court erred in denying his motion to sever his offenses, and Purnell contends that the court improperly limited his cross-examination of a government witness. Finding no reversible error, we affirm.

I.

Allen committed three separate bank robberies on three separate days, June 16, June 22, and June 29, 1995. Purnell participated in the robbery on June 22.

2

Government witness Thornton Armstead testified that on June 16, 1995, he planned that day's bank robbery with Allen, Purnell, and Perry Colter (who pleaded guilty to the robbery and a related firearms charge). Armstead had also pleaded guilty to bank robbery and a gun charge as a result of his participation in the June 16 robbery, and he testified against Allen and Purnell pursuant to his plea agreement with the government. At trial Armstead explained that Purnell participated in the June 16 planning discussions but left those discussions to buy drugs. Before Purnell returned, the other three men had left to rob the bank. Allen and Colter carried out the robbery. (Once the three were near the bank, Armstead was dispatched to drive a second car back to his house.) Following the robbery, Allen and Colter regrouped with Armstead at the latter's house, and Purnell joined them there. Armstead was then sent to buy drugs with the robbery proceeds. When Armstead returned, he, Allen, and Purnell shared the drugs, while Allen described the day's robbery and revealed his intent to rob another bank.

On June 22, 1995, Allen, Colter, and Purnell robbed a second bank. Armstead testified that the men planned the robbery at his house and returned there after the robbery to divide the money. On June 29, 1995, Allen and Colter robbed a third bank, and Allen confessed to that crime.

Armstead testified that in addition to the drug use on June 16, he had, during the previous six months, regularly used drugs with Allen and Purnell. Armstead further testified that during the same six-month period prior to the bank robberies, he had participated in five other armed robberies (of people, not banks) with Allen.

II.

Allen and Purnell claim that the district court abused its discretion in denying their motions to sever their trials. Purnell, in particular, contends that a severance was necessary because much of the evidence related either to bank robberies that did not concern him or to other crimes committed by Allen and Armstead alone. Purnell argues that this "accumulation of evidence" against Allen and others could have led the jury "to confusion or prejudice in assessing the evidence against" him. Additionally, Purnell says that the denial of the motions

3

to sever prejudiced him because he was not allowed to cross-examine Armstead fully. The district court prevented Purnell from cross-examining Armstead about (among other things) an unrelated crime in which Armstead and Allen participated because of the risk of prejudice to Allen.

We review a district court's denial of a motion to sever for abuse of discretion. See United States v. LaRouche, 896 F.2d 815, 830 (4th Cir. 1990). Multiple defendants may be charged and tried together if they are alleged to have participated in the same act or series of acts. See Fed. R. Crim. P. 8(b). However, severance may be granted in the district court's discretion if it appears that joinder prejudices a defendant. See Fed. R. Crim. P. 14; United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995). Allen and Purnell were charged jointly with participating in the same act of robbing a bank (one count) and in using a firearm in relation to the robbery (one count). Although there were certain counts aimed only at Allen, the district court carefully instructed the jury to consider each count and each defendant's involvement in each count separately. The court also instructed the jury that certain evidence was to be limited to one defendant (Allen) and could not be considered "in any respect" against the other defendant (Purnell). In addition, as discussed in Section V, infra, the limitation on the cross-examination of Armstead did not unduly hamper Purnell, as he was given ample opportunity to question the motives and veracity of Armstead. We are satisfied that there was no prejudice in trying Purnell and Allen together. Therefore, the district court did not abuse its discretion in denying their motions to sever their trials.

III.

Allen also contends that the district court erred in denying his motion to sever the offenses relating to each of the three charged bank robberies. He argues that the consolidation of the multiple offenses into a single trial prejudiced him by creating the risk that the jury rendered a verdict based on the evidence of the three transactions collectively, rather than considering each charge separately.

Multiple offenses may be charged and tried together if they are of the same or similar character or are based on the same transaction or multiple transactions constituting part of a common scheme. See Fed.

4

R. Crim. P. 8(a). Again, a court, in its discretion, may order separate trials of counts if it appears that a defendant is prejudiced by joinder. See Fed. R. Crim. P. 14. It is not an abuse of discretion to deny a motion for severance when "the offenses are identical or strikingly similar in the method of operation and occur over a short period of time." United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995). The bank robberies in this case occurred within a very short period of time, thirteen days, and were similar in execution, that is, there were similar methods of operation, including similar disguises. Thus, given the similarities in the offenses and the court's instruction to the jury to consider each count separately, the court did not abuse its discretion in denying Allen's motion to sever the counts and allow him three separate trials.

IV.

Purnell and Allen next claim that the district court abused its discretion in admitting evidence of other crimes. Government witness Armstead testified that he used drugs together with both defendants for a period of approximately six months before the charged crimes, including on the day of one of the bank robberies, and that he had committed several previous armed robberies with Allen. We conclude that the testimony regarding drug use immediately before and after the one bank robbery was properly admitted by the district court as intrinsic to the crimes charged. However, the testimony concerning earlier drug use and other robberies committed by Allen was extrinsic to this case and thus subject to the restrictions of Rule 404(b) of the Federal Rules of Evidence. We conclude that even if this evidence of earlier crimes was not admissible under Rule 404(b), its admission was harmless error.

Rule 404(b) excludes evidence concerning other crimes or wrong-doing used to show a defendant's bad character. However, as a general matter, this restriction on character evidence does not apply to intrinsic acts -- acts that are "inextricably intertwined," "part of a single criminal episode," or "necessary preliminaries" to the crime charged. United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996). This rule permits witnesses to provide a full and complete account of events, without having to avoid mentioning other bad acts that are inseparably woven into that narrative.

5

Armstead's testimony concerning drug use on the day of the June 16, 1995, robbery was intrinsic to the crimes charged because the events of that day were inextricably intertwined. Armstead's testimony about Purnell's drug purchase while the robbery was being planned, the defendants' use of the robbery proceeds to buy more drugs, and their consumption of the drugs while Allen discussed a further robbery provided a valuable context to Armstead's account of the crime. It allowed Armstead to testify freely about what happened that day, placing the robbery within a natural and continuous sequence of events and explaining the interaction among the participants in the crime. This testimony about drug use on June 16 was therefore properly admitted.

We believe, however, that Armstead's testimony regarding shared drug use with Allen and Purnell on prior occasions and of prior armed robberies committed with Allen was extrinsic to these bank robberies. Specifically, armed robberies (in the case of Allen) not involving banks and drug use (in the case of both Allen and Purnell) that occurred days, weeks, or months prior to the charged offenses are not "inextricably intertwined" with the bank robberies. Nor are they part of a single criminal episode or a necessary preliminary to the bank robberies. Chin, 83 F.3d at 88. Finally, they are not unavoidably interwoven with the crimes charged, and they are sufficiently separate from the bank robberies in time and nature. Because the prior crimes were extrinsic acts, Armstead's testimony about them must be evaluated under Rule 404(b). Id. at 87.

Under Rule 404(b), evidence of other crimes and wrongdoing may be admitted if it is not used to show a propensity for that conduct but rather is used for other purposes such as proof of motive or intent. See, e.g., United States v. Queen , 132 F.3d 991, 994-95 (4th Cir. 1997). The government argues that Armstead's testimony regarding past drug use with Allen and Purnell and past robberies with Allen explains the nature of the relationship between the defendants and provides a reason why the defendants would trust each other in planning a crime. See United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995); United States v. McMillon, 14 F.3d 948, 955 (4th Cir. 1994). The defendants, on the other hand, contend that this evidence is not relevant to motive, intent, or preparation for the bank robbery crimes charged. They are saying, in effect, that the evidence of the prior acts

6

was not "necessary in the sense that it is probative of an essential claim or an element of the offense." United States v. Queen, 132 F.3d at 997. The defendants further claim that the probative value of this testimony is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403.

Even if we assume that the evidence of past drug use and past robberies was not admissible under Rule 404(b), its admission constituted, at most, harmless error. The other evidence against Allen was overwhelming. He was implicated by the testimony of Armstead, a participant in the bank robberies, and had been identified by eyewitnesses to the robberies on June 16 and June 22, 1995. Witnesses to both robberies described him as wearing the same disguise of a woman's wig and sunglasses, and items of his disguise were later found in Armstead's house. He was arrested while fleeing from the third robbery on June 29, 1995, and confessed his involvement in that crime. The police found bait bills from that robbery in Allen's getaway car and in the pocket of a jacket worn by him. The evidence against Purnell was also strong. Purnell was fully implicated in the June 22, 1995, robbery by Armstead, and Purnell was identified by a bank teller as being one of the robbers. In addition to the strength of the other evidence, the district court also gave a clearly worded instruction to the jury, narrowly limiting the possible use of the evidence of other crimes. Thus, as we have indicated, we conclude that the admission of this evidence was, at most, harmless error.

V.

Purnell finally contends that the district court abused its discretion in limiting his cross-examination of Armstead. Specifically, Purnell claims that the court's limitation on cross-examination violated his rights under the Sixth Amendment's Confrontation Clause because, he says, he was not adequately allowed to explore Armstead's motive for testifying or his possible bias.

Purnell was not permitted to cross-examine Armstead regarding (1) his failure to pay child support, (2) his cooperation agreement with the state of Maryland in an unrelated prosecution against Allen, (3) his transfer to a different prison, and (4) a prior arrest not resulting in a conviction. However, the district court allowed Purnell to

7

cross-examine and impeach Armstead on wide-ranging topics, including his drug use and drug dealing, prior criminal record, cooperation agreement with the government, and general dishonesty.

Despite the limitation on cross-examination, we conclude that Purnell had ample opportunity to explore Armstead's motivations and biases and to test his credibility. The district court therefore did not abuse its discretion in limiting cross-examination. See United States v. Powers, 59 F.3d 1460, 1470 (4th Cir. 1995). Further, the district court's limitation did not violate Purnell's rights under the Sixth Amendment's Confrontation Clause. See United States v. Ambers, 85 F.3d 173, 176 (4th Cir. 1996).

Accordingly, we affirm the convictions of both Purnell and Allen.

AFFIRMED

8