**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 96-4688

JEFFREY ROY CROSBY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CR-96-361)

Submitted: June 24, 1997

Decided: April 2, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Debra O. Jackson, Florence, South Carolina, for Appellant. J. Rene
Josey, United States Attorney, Nancy C. Wicker, Assistant United
States Attorney, Kelly E. Shackelford, Assistant United States Attor-
ney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jeffrey Roy Crosby appeals his jury conviction and sentence on two counts of solicitation of the murder-for-hire of his United States Probation Officer in violation of 18 U.S.C. #8E8E # 373, 1114 (1994).**1** The district court sentenced Crosby on August 29, 1996, to a term of imprisonment of 240 months on count one and 125 months on count two, with those sentences to run consecutively with each other and with the federal sentence Crosby was serving at the time of his sentencing on the instant charges. In addition, the district court sentenced Crosby to a supervised release term of three years on each count, to run concurrently, ordered Crosby to participate in an inpatient/outpatient program of mental health, and further ordered payment of the $100 special assessment. Crosby's sentence was based on an offense level of thirty-five and a criminal history category VI.

Crosby noted a timely appeal, claiming, by counsel, that the district court abused its discretion in denying his pre-trial and pre-sentencing motions for a psychiatric examination, and that the court's enhancement of his criminal history category pursuant to U.S. Sentencing Guidelines Manual § 4A1.1(d) (1995), was inappropriate. As to the second issue, Crosby specifically contends that the crime of solicitation was completed during his first, or, at the latest, his second, contact with the intended perpetrator, and was therefore completed before he was imprisoned. In addition, Crosby raises several issues pro se: (1) the wiretaps used against him were illegally obtained; (2) the wiretap tapes were unintelligible, prejudicial, confusing, misleading, and not protected against tampering; (3) the district court erred in

_____

**1** Count one alleged the solicitation of others in violation of § 373 between September 18, 1995, and October 31, 1995; Count two alleged the solicitation of another in violation of § 373 between February 9, 1996, and April 16, 1996.

2

denying his motion for acquittal on the ground of insufficiency of evidence to support the solicitation charge; (4) the district court erred in denying Crosby's motion to suppress certain statements Crosby made on the tapes; (5) violation of the double jeopardy clause; (6) prosecutorial misconduct; and (7) ineffective assistance. For the reasons stated below, we affirm Crosby's conviction and sentence.

The district court's denial of Crosby's motions for psychiatric examination are subject to review for abuse of discretion. United States v. West, 877 F.2d 281, 285 n.1 (4th Cir. 1989). The record reveals that the district court conducted a hearing on Crosby's motion in compliance with 18 U.S.C. § 4241(a) (1994). In addition, the district judge had extensive opportunities to observe and talk with Crosby in hearings in this case and in a previous criminal case, and specifically found Crosby to be lucid, competent, and involved in his defense. The judge reviewed multiple presentence reports from Crosby's prior criminal cases as well as the record of supervision from a period of supervised release, none of which indicated that Crosby had any problem being able to understand the nature and consequences of proceedings against him, or in assisting in his defense. Moreover, as to Crosby's pre sentence motion for psychiatric examination, the district judge also heard Crosby testify during the four-day trial in this case. Under these circumstances, we cannot say that the district judge abused her discretion in denying Crosby's pre-trial and pre-sentencing motions for psychiatric examination.

Crosby's second claim, by counsel, is that the offense of solicitation was completed prior to his being under a criminal justice sentence, and that the district court erred in enhancing his criminal history category pursuant to USSG § 4A1.1(d), with the resultant requirement that Crosby serve a portion of his sentence consecutively to an earlier sentence pursuant to USSG § 5G1.3(a). Count two of Crosby's indictment alleged conduct committed from on or about February 9 to April 16, 1996. Crosby was sentenced on February 20, 1996, for unrelated forearms violations and cocaine charges, and, thus, began a criminal justice sentence of imprisonment on that date. Crosby alleges that the offense alleged in Count two of the indictment was concluded on February 9, 1996 (or at the latest February 14, 1996), when Crosby first approached Michael Ray about murdering Crosby's probation officer.

3

The factual findings of the sentencing court are reviewed under a clearly erroneous standard; mixed questions of law and fact regarding the Sentencing Guidelines are reviewed with due deference give to the district court. United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996); United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). The district court found that while Crosby in fact made his initial approach prior to the date of sentencing on the firearms and narcotics charges, he did not finalize the approach or actually reach a firm agreement relative to the murder of his probation officer until after February 20, 1996, and that it was not until that firm agreement was reached that the offense of solicitation occurred.

The record reveals that it was not until Crosby's third contact with Michael Ray, on March 21, 1996, in which Ray gave Crosby specific details about how and when the murder of the probation officer would take place, and until other post-February 20, 1996, evidence was uncovered by the Government, that the Government had sufficient evidence which was essential to the Government's proof of circumstances strongly corroborative of Crosby's intent to solicit to commit a crime of violence. We agree with the district court that the Government proved by a preponderance of the evidence that while Crosby made his initial contacts of solicitation to commit the murder-for-hire of a United States Probation Officer prior to the time he was sentenced and imprisoned on unrelated firearms violations and cocaine charges, Crosby's relevant contact for purposes of the crime of solicitation occurred after Crosby was under a criminal justice sentence. See United States v. Nelson, 6 F.3d 1049, 1054-55 (4th Cir. 1993) (discussing standard for enhancement).

Given the facts of this case, we find that the district court's determination that Crosby committed part of the offense alleged in Count two of the indictment while under a criminal justice sentence, and its enhancement of Crosby's criminal history category pursuant to USSG § 4A1.1(d), was proper. See Nale, 101 F.3d at 1003; Daughtrey, 874 F.2d at 217. Finally, because the district court properly enhanced Crosby's criminal history category pursuant to USSG§ 4A1.1(d), we find that the court's imposition of a consecutive sentence as to Count two of the indictment was appropriate pursuant to USSG § 5G1.3(a).

4

Crosby's first pro se claim is that the wiretap used by the Government informant was illegal. Specifically, he alleges that there was no authorization or court order as required under Title III of Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C.A. §§ 2510-2521 (West 1970 & Supp. 1993), for the taped intercepts on February 16, 21, or March 21, 1996. He claims that no order or application for order of the surveillance, as required by Title III, has ever been produced by the Government. A review of the transcript of the pre-trial motions hearing before the district court on July 12, 1996, reveals that Crosby's counsel expressly withdrew any Title III objections to the Government's electronic surveillance evidence. Moreover, upon questioning by the trial judge, Crosby stated that he understood that his attorney was withdrawing the motion to suppress the evidence of the taped conversations, and that he agreed with the withdrawal of the motion. See generally Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Via v. Superintendent, Powhatan Correctional Ctr., 643 F.2d 167, 171 (4th Cir. 1981). Given that Crosby withdrew his Title III objections below, we review his claim on appeal for plain error. See United States v. Olano, 507 U.S. 725, 734 (1993); United States v. Young, 470 U.S. 1, 16 (1985); United States v. Cedelle, 89 F.3d 181, 184-85 (4th Cir. 1996). We find no plain error in the record warranting review of Crosby's claim.[2]

In two of his pro se claims, Crosby alleges that the wiretap tapes were unintelligible, prejudicial, confusing, misleading, and not protected against tampering (claim two), and that the district court erred in denying his motion to suppress certain statements Crosby made on the tapes (claim four). He claims that witness testimony as to the portions of the tapes that were unintelligible was inaccurate, misleading, and prejudicial, and specifically claims discrepancies between what he actually said on portions of the tape and what the witness testified (and the transcripts reflected) that he said. Crosby also claims that he was forced to testify to explain what he said on the tapes and to clar-

_____

[2] Also, to the extent Crosby's counsel objected to the March 21, 1996, tape during the trial on other grounds, we find that the district court did not abuse its discretion in allowing the tape into evidence, given the proof of authorization by the Federal Bureau of Investigation and the Department of Justice, which the Government produced. See United States v. Chin, 83 F.3d 83, 87 (4th Cir. 1996).

5

ify inaccurate and prejudicial testimony by the Government's informant regarding what Crosby had said on the tapes.

The district court's admission of evidence under Fed. R. Evid. 404(b) is subject to an abuse of discretion standard, and will only be overturned if the judge's decision was "`arbitrary or irrational.'" Chin, 83 F.3d at 87 (quoting United States v. Powers , 59 F.3d 1460, 1464-65 (4th Cir. 1995)). A district court may in its sound discretion exclude a tape if unintelligible or inaudible portions of it are so significant that the whole recording is rendered untrustworthy. See United States v. Watson, 594 F.2d 1330, 1335 (10th Cir. 1979).

Crosby's counsel had the opportunity to explore through cross-examination any inaccuracies in the tapes, the testimony relating to the tapes, and the transcripts. The district court gave limiting instructions to the jury regarding the tapes themselves and the transcripts, specifically instructing the jury, on repeated occasions, that the tapes themselves were the best evidence, and that the transcripts were to be used only as an aid. Proof of the accuracy of the transcripts was offered both pre-trial and at trial. Plus, Crosby testified regarding his statements on the tapes. Moreover, the record reflects that the district judge systematically and thoroughly considered each objection made by Crosby's attorney concerning each specific portion of the tapes which Crosby was claiming were prejudicial, not relevant, or misleading, in some cases listening to the portion of the tapes herself, prior to making her rulings regarding admissibility. Under these circumstances, we cannot say that the district court abused its discretion regarding the admissibility of the portions of the tapes that ultimately were entered into evidence. See United States v. Capers, 61 F.3d 1100, 1106 (4th Cir. 1995) (standard), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3779 (U.S. May 20, 1996) (No. 95-7022). Finally, as to the admissibility of statements Crosby made on the tapes which he contends were prejudicial, taken out of context, misleading, and/or not relevant, we find that the district court's thorough consideration of Crosby's objections to those statements, and ultimate determination that the probative value of the statements outweighed any prejudice, was not an abuse of its discretion. See Chin, 83 F.3d at 87.

Crosby's third pro se claim is that the district court erred in denying his motion for acquittal on the ground of insufficiency of evidence

6

to support the solicitation charge. In evaluating the sufficiency of the evidence supporting a criminal conviction on direct review, "the verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government to support it." Glasser v. United States, 315 U.S. 60, 80 (1942).

This court considers circumstantial and direct evidence, and allows the government the benefit of all reasonable inferences from the facts proven to those sought to be established. See United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). In resolving issues of substantial evidence, this court does not weigh evidence or review witness credibility. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Circumstantial evidence need not exclude every reasonable hypothesis of innocence. See United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989).

Even the uncorroborated testimony of an accomplice may be sufficient to sustain a conviction, see United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993), and it is the role of the jury to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence. See United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). This Court may reverse a jury verdict only when there is no "substantial evidence, viewed in the light most favorable to the Government, to uphold it." Burks v. United States, 437 U.S. 1, 17 (1978).

The trial evidence fully supports Crosby's conviction. Crosby was detained prior to trial and incarcerated in the Florence County Detention Center in Effingham, South Carolina, on firearms and cocaine charges arising out of conduct occurring while he was on supervised release from a prior offense. While in the Florence County Detention Center, Crosby met two inmates, Terry McKnight and Jimmy Parker, to whom he expressed his hatred for his probation officer, Robbie Baird, whom he blamed, together with his common-law wife, Dixie Welch, for the revocation of his supervised release, return to prison, and the firearm and drug indictments. Both McKnight and Parker testified that in late September 1995 Crosby spoke with them in separate conversations, asking for help in murdering both Baird and Welch. They each testified as to specific details Crosby gave them individu-

7

ally about how the murders could be carried out, including where and how the murders could take place. They also each testified that Crosby spoke with them individually about how he would pay them for murdering Baird and Welch and/or arranging for their murders. McKnight testified that in late September 1995 he informed authorities that Crosby had solicited him to murder federal probation officer Baird and Crosby's estranged common-law wife, Welch. McKnight told FBI agents that Crosby had also been talking to Parker about carrying out the murders. Parker testified that he was uncooperative when interviewed by FBI agents, and that he told Crosby that FBI agents had approached him regarding Crosby's murder-for-hire plot.

Michael Ray, the Government's primary witness as to Count two, testified that he was Crosby's new pod-mate, and that immediately upon their introduction, Crosby told Ray of his hatred for his probation officer, Baird. Ray testified that Crosby then attempted to solicit Ray to help him hire someone to murder Baird. Ray testified that he contacted his probation officer, Vic Bartell, and informed Bartell of Crosby's plot to kill Baird. On February 13, 1996, Ray met with Agent Kevin Harvey of the Federal Bureau of Investigation and agreed to tape record conversations he had with Crosby. The first such conversation was taped on February 16, 1996, the second on February 21, 1996, and the third on March 21, 1996.

The actual tape recordings were played for the jury at trial, and the jury was supplied with a transcript of the tapes, of which Ray assisted in the preparation. In addition, Ray testified to his recollection of what Crosby was saying on the tapes.

Through the tape recordings, transcripts, and Ray's testimony, Crosby's murder-for-hire plot was described. Ray testified as to how Crosby was going to sell his boat and use some of the proceeds to hire a hit man to kill Baird. Crosby initially offered Ray $1000 from the boat proceeds to kill Baird; $1500 was the final figure to which Crosby agreed. Crosby and Ray negotiated the price of the murder and discussed the potential dates for the murder, as well as the identity of the potential hit man. Ray told Crosby that the hit man had been staking Baird out, determining his daily schedule. He then detailed to Crosby the time, manner, and circumstances in which Baird was to be murdered. Ray testified that at no time in his conver-

8

sation with Crosby did Crosby state or indicate that he had changed his mind about having Baird killed. Ray testified that at the end of the discussion on March 21, 1996, Crosby was made to understand that Baird's murder was to take place either the next day on Friday or on the following Monday.

On Friday, March 22, 1996, Crosby was transported to the Orangeburg Detention Center where Crosby met another inmate named James Roy Toothe. Toothe testified that upon Crosby's arrival at Orangeburg, Crosby asked Toothe whether they could receive news from Florence, and that a man in a high position in Florence was supposed to be killed. Crosby explained to Toothe that he had arranged for the murder of his probation officer, and told Toothe details as to how the murder was to be committed and what Crosby's role was in arranging for the murder. Given the trial testimony and evidence, and construing that evidence in the light most favorable to the Government, we find that the evidence was sufficient for a reasonable jury to have found Crosby guilty of solicitation of the murder-for-hire of his United States Probation Officer, as alleged in both counts of the indictment. See Glasser, 315 U.S. at 80.

Crosby next alleges violation of the Double Jeopardy Clause regarding the two counts of his indictment. Specifically, he claims that the evidence was insufficient to convict him on the first count (having the time frame of from on or about September 19, 1995, until on or about October 31, 1995), and that his conviction on the two counts was based on facts related to the time frame set forth in the second count only (having the time frame of from on or about February 9, 1996, to the date of the indictment), resulting in multiple charges of the same offense, and multiple convictions on the same offense. He bases his argument on testimony of Special Agent Harvey before the grand jury that there was insufficient evidence to prosecute Crosby on the first count of the indictment involving McKnight and Parker. Crosby misconstrues the law and the evidence.

Even assuming, arguendo, that the Government decided not to prosecute Crosby after his first round of solicitation to murder based upon the lack of evidence strong enough to obtain a conviction, that same evidence apparently was strong enough, when coupled with the ample evidence to support a conviction on the second count, for the

9

jury to convict on both counts. Crosby was indicted on separate trans-
actions involving separate attempts and separate solicitations. As we
have found, the evidence was sufficient for the jury to convict on both
counts. There was no double jeopardy violation, and we dismiss this
claim.

Crosby next alleges several instances of prosecutorial misconduct.
He claims that the prosecutor ordered him into maximum segregation
lock down status, where he had no access to the law library, based
upon the belief that he had approached another inmate to contract a
murder for hire of the prosecutor, a federal judge, individuals in the
probation office, and others. Even assuming, arguendo, that Crosby
has made a proper allegation of prosecutorial misconduct, we find his
conclusory claims of denial of due process rights to legal research and
a fair trial to be insufficient to state a claim. He also alleges plain
error in several statements made by the prosecution regarding Baird's
children, in asking Crosby at trial if he thought the proceedings
against him for murder-for-hire were a joke, in commenting that he
was willing to fake affidavits or lie, and in confusing the language of
the tapes. Because Crosby has not demonstrated that the statements
made by the prosecutor affected his substantial rights, and seriously
affected the fairness, integrity, or public reputation of the judicial pro-
ceedings, we find this claim to be without merit. See United States v.
Olano, 507 U.S. at 731-32; Muth v. United States, 1 F.3d 246, 250
(4th Cir. 1993).

Finally, Crosby alleges that his attorney was ineffective for failing
to: (1) call to testify certain defense witnesses; (2) obtain certain
documents; (3) pursue an entrapment defense; and (4) adequately
question witnesses. Also, Crosby claims plain error in the fact that his
former court-appointed attorney on charges other than the solicitation
charges at issue in this case was the same individual who was repre-
senting Ray and who negotiated Ray's cooperation with the Govern-
ment to tape record Crosby regarding his solicitation of the murder-
for-hire of his probation officer. He claims that his defense attorney
on the solicitation charges was aware of this conflict of interest, yet
failed to bring the issue to the court's attention, and refused to call the
previous attorney as a witness at trial.

A claim of ineffective assistance of counsel should be raised by
motion under 28 U.S.C.A. § 2255 (West 1994 & Supp. 1997), in the

10

district court, and not on direct appeal, unless it"conclusively appears" from the record that the defense counsel did not provide effective representation. <u>United States v. DeFusco</u>, 949 F.2d 114, 120-21 (4th Cir. 1991). We find that it does not conclusively appear from the face of the record that Crosby's defense counsel failed to provide effective representation. Thus, Crosby's recourse must be to file a motion under 28 U.S.C.A. § 2255.

Accordingly, we affirm Crosby's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

<u>AFFIRMED</u>

11