**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4905

THOMAS HOWARD PRICE, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CR-96-31)

Argued: April 10, 1998

Decided: June 26, 1998

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge,
and WILLIAMS, Senior United States District Judge
for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kevin Lee Barnett, LAW OFFICE OF HAROLD J.
BENDER, Charlotte, North Carolina, for Appellant. Brian Lee Whis-
ler, Assistant United States Attorney, Charlotte, North Carolina, for
Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney,
David C. Keesler, Assistant United States Attorney, Charlotte, North
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

INTRODUCTION

Thomas Howard Price appeals his conviction and sentence for causing a threatening communication to be sent by the United States Postal Service pursuant to 18 U.S.C. § 876. A jury found Price guilty and the district court imposed a sixty (60) month sentence upon him.

In this appeal, Price first assigns error to the district court's admission into evidence of certain government evidence pursuant to Rules 404(b) and 403 of the Federal Rules of Evidence. In suggesting that the district court abused its discretion in admitting the evidence, Price contends that it was inadmissible evidence of prior bad acts under Fed. R. Evid. 404(b) and that it was more prejudicial than probative under Fed. R. Evid. 403. Price also contends that the district court erred in denying his Fed. R. Crim. P. 29 motion for acquittal because the government failed to produce sufficient evidence to support a conviction. Price argues further that the district court erred by compelling the testimony of a hostile government witness, Janice Snead Watkins, and by allowing the government to examine her pursuant to Rule 611 of the Federal Rules of Evidence. Finally, Price suggests that the district court's classification of Price as a "Career Offender" under the United States Sentencing Guidelines was a significant overstatement of his prior criminal history and furthermore, that the district court erred by relying on that classification to deny Price a downward departure from the Guidelines. Because we find no merit to these contentions, we affirm the conviction and sentence.

FACTUAL BACKGROUND

Thomas Howard Price was convicted in 1994 of serious state felony charges arising from his severe assault on his wife, Heather Price.

2

Following his conviction on those charges, Thomas Price was sentenced to 24 years of imprisonment. While in prison, Price befriended a female prisoner who ultimately assisted him in sending a threatening letter to his wife. That female prisoner, Janice Snead Watkins, copied over the language provided to her by Price and mailed it to Heather Price for him. The letter read as follows:

> Dear Slut, you better enjoy life while you still can. God forgives, I don't. Paybacks are hell and you have hell to pay. There will come a day when I dance on your grave. If unable to dance, I will crawl across it. If unable to dance, I will draw. I will be the one who puts you there and throws dirt on your body. I dream about it every night. One day you will turn around and there I'll be, and I can't wait to see the fear in your eyes before I kill you. All three of you will die by my hands.

At trial, Heather Price testified that on July 19, 1995 she received in her mailbox a letter containing the language quoted above. The return address contained the name of Lori Fowler, and the envelope containing the letter bore the stamp and return address of the Women's Correctional Institute in Raleigh, North Carolina. Heather Price testified that she never knew anyone by the name of Lori Fowler. Heather Price testified that reading the letter made her "very upset" and "angry." She stated that even though the letter itself was written on purple lined paper in a woman's handwriting, she recognized within the letter several expressions that Thomas Price had often used when they were married. Among these expressions were "Dear Slut"; "God forgives, I don't"; and "Paybacks are hell, and you have hell to pay." Heather Price also testified that she recognized the unusual quotation mark symbol that appeared at the bottom of the letter as one that Thomas Price had used in previous letters.

Subject to the district court's cautionary instruction, Heather Price testified about other incidents that had occurred during her relationship with Thomas Price. In 1992 Thomas Price pointed a gun directly at Ms. Price's head and threatened to kill her in front of their children. In September 1994 Thomas Price beat Ms. Price so severely that she had to be hospitalized. This was the incident that ultimately led to Thomas Price's state conviction and 24 year sentence. Ms. Price testi-

3

fied about threatening phone calls she received from Thomas Price. On one occasion, he called her from a county jail while he was awaiting trial for the September 1994 incident, and according to Ms. Price, "he told me that . . . I could run to my dad's, who lives in Texas, that it didn't matter how far I went, he was going to find me, and that he knew where my mother and my sisters lived and he wasn't finished with what he had started."

Heather Price's best friend Ramona Taylor testified that she took Ms. Price to the hospital after the September 1994 assault by Thomas Price. She testified that the injuries which Thomas Price inflicted on Ms. Price made Ms. Price look "like a monster." She also testified that she was present when Ms. Price opened the threatening letter and described Ms. Price as being "very scared" and feeling like "she had to look over her shoulder."

Janice Snead Watkins ("Snead") initially refused to testify but ultimately did answer the government's questions. She became acquainted with Thomas Price while they were both being held at the Union County Jail. The two of them talked to one another through a wall at the jail and corresponded by writing letters back and forth to each other. Correspondence between Price and Snead continued after Snead was transferred to the Women's Correctional Institute in Raleigh. Snead testified that in one of the letters which she received from Price, he asked her to copy, in her handwriting, some threatening language and then to mail the message to Heather Price. Snead followed this request and informed Thomas Price that she had done so by using the words "it is done" in a subsequent letter to him.

Other witnesses at trial corroborated the testimony of Heather Price, Ramona Taylor and Janice Snead Watkins. Deputy Scott Bass confirmed that Thomas Price and Snead had been in the Union County Jail together and that they had developed a relationship during that time. Bass also produced a mail log which evidenced frequent correspondences between Price and Snead. Peggy Bryant testified about the mail system at the correctional institute where Snead was ultimately housed, and identified several exhibits as mail that originated from that facility, including the threatening letter to Heather Price. She also confirmed that Snead was an inmate at the facility at the time the letter was sent, and that there has never been a Lori Fow-

4

ler at the facility. Finally, J.C. Wilson provided testimony about the similarity that exists between the mail systems in the men's and women's prison system.

The government's final witness at trial was Kim Teeter. Teeter testified that she had known both Heather Price and Thomas Price for about 12 years. Teeter testified that since Thomas Price had been incarcerated in the Department of Corrections, Price has mailed letters to her. In two of the letters, Price referred to his wife Heather Price as "that redheaded slut" and "that slut." In another letter, Price used the expression "God forgives, Tommy don't." Finally, Teeter testified that Price signed a letter using the same unusual quotation marks that appear at the bottom of the July 1995 threatening letter to Heather Price.

Lisa Deese testified on behalf of Thomas Price. She testified that she was in the Union County Jail with Price and Snead and that she has corresponded over time with Price. Deese also testified that on one occasion Snead said that she would like to write a letter to Heather Price.

ANALYSIS

> 1. The District Court Properly Admitted with Cautionary Instructions Certain "Other Act" Evidence under Rules 404(b) and 403.

Consistent with Rules 404(b) and 403 of the Federal Rules of Evidence, the "other act" evidence showing Price's propensity to abuse his wife and children was admissible as intrinsic to the crime itself, or in the alternative, as evidence of the defendant's motive, identity, or state of mind. Price contends, however, that this evidence failed to pass the balancing test of rule 403 because it was unfairly prejudicial, confusing, and misleading to the jury. We disagree. It is within the sound discretion of the district court to admit Rule 404(b) evidence and Price has failed to show that an "arbitrary" or "irrational" abuse of that discretion has occurred. United States v. Rawle, 845 F.2d 1244 (4th Cir. 1988). Moreover, even if Price could show that the trial court erred in admitting the Rule 404(b) evidence, Price cannot show that the cautionary instructions given by the district court to the jury

did not obviate any unfair prejudice that may have existed or eliminate the possibility that the district court's rulings could rise to the level of an "abuse of discretion." United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991).

This Court held recently that Rule 404(b), entitled "Other Crimes, Wrongs, or Acts," applies only to admission of evidence of other acts that are extrinsic to the crime charged. United States v. Chin, 83 F.3d 83 (4th Cir. 1996). Accordingly, acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on the admissibility of evidence. Id. at 88; United States v. Barnes, 49 F.3d 1114, 1149 (6th Cir. 1995). Rule 404(b) is not applicable, therefore, to evidence of crimes or acts which arose out of the same series of transactions as the charged offense or that are necessary to complete the story of the charged crime.

When the offered evidence is of extrinsic acts covered by Rule 404(b), it is well established in this Circuit that the district court's decision to admit evidence under Rule 404(b) will not be overturned on an appeal absent an "arbitrary or irrational" abuse of discretion. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988). In the case at hand this Court can make no such finding.

Threatening telephone calls from Thomas Price to Heather Price: After severely beating his wife in September 1994 but before the resulting state court trial had been finalized, Thomas Price called Ms. Price and threatened to find her wherever she went and to kill her -- to "finish what he had started." Contrary to Thomas Price's position, evidence of this phone call is admissible under Rule 404(b) because it is proof of an act which is "extrinsic" to the crime charged. By showing Price's propensity for threatening and abusing his wife, evidence of this import directly contravenes Price's theory at trial which was that Snead mailed the letter to Heather Price on her own volition. This evidence establishes congruity of both conduct and motive as it existed between Thomas Price and various members of his family. For this reason it is not possible to construe the district court's admission of this evidence as an exercise in irrational or arbitrary adjudication. Rather, this evidence was admissible under Rule 404(b) and cured of any potential Rule 403 prejudice by the district court's care-

6

fully tailored jury instructions. <u>United States v. Mark</u>, 943 F.2d 444, 448 (4th Cir. 1991).

<u>Threatening Heather Price with a Gun</u>: Thomas Price claims that the district court improperly admitted evidence of a 1992 incident in which the defendant pointed a gun at the victim's head and threatened to kill her. Again, this evidence is clearly "extrinsic" under Rule 404(b) and is admissible because the district court acted neither irrationally nor arbitrarily when admitting it. In regards to holding this evidence to a Rule 403 balancing test, any prejudice against Thomas Price which may have flowed from this evidence was obviated by the trial court's careful instruction to the jury concerning the limited proper use of this evidence. <u>United States v. Mark</u>, 943 F.2d 444, 448 (4th Cir. 1991).

<u>Prior Assault, Trial, and Sentencing</u>: Thomas Price asserts that the trial court should have refrained from admitting evidence of his September 1994 assault on Heather Price. He also suggests that the trial court should not have admitted evidence of his conviction on charges stemming from that assault and his subsequent sentencing to 24 years of imprisonment. At trial Heather Price described for the jury the severe assault and the trial and sentence which followed it. Throughout her testimony and that of other witnesses, the trial court properly cautioned the jury about the limited use of the evidence and therefore obviated any undue prejudice which may have otherwise resulted therefrom.

Evidence of Thomas Price's brutal assault on Heather Price is not extrinsic and therefore does not fall within the scope of Rule 404(b). Rather, by virtue of it arising out of the same series of transactions as the charged offense, evidence of the brutal attack on Heather Price is intrinsic in nature. Moreover, admission of this evidence is absolutely necessary in order to give the jury the complete story surrounding the charged offense. <u>United States v. Chin</u>, 83 F.3d at 88; <u>United States v. Kennedy</u>, 32 F.3d 876 (4th Cir. 1994), <u>cert. denied</u>, 130 L.Ed.2d 883 (1995). For these reasons, the district court properly admitted this evidence.

Even if this Court were to subscribe to Thomas Price's assertions that this evidence should be subjected to the limitations of Rule

7

404(b), this evidence remains admissible because it speaks to the motive, state of mind, and identity of Heather Price's attacker. Because the district court cured all potential Rule 403 issues with prudent cautionary instructions to the jury throughout the proceedings, admitting this evidence was neither irrational nor arbitrary.

Thomas Price's Letters: Price asserts that the trial court should not have admitted the letters he wrote to Janice Snead Watkins and to Kim Teeter. However, these letters qualify as legitimate "other act" evidence under Rule 404(b) and are therefore admissible. Letters containing "it is done" language qualify as "intrinsic" evidence under the law and are also admissible. United States v. Chin, 83 F.3d at 88; United States v. Kennedy, 32 F.3d at 876. Other letters containing "redheaded slut" language or the unusual question mark "signature" symbol were admissible as identity evidence. Still other letters contained language which revealed Price's continuing anger at Heather Price and thereby showed his motive for committing the offense for which he was charged.

In sum, all of the "other act" evidence complained of by Thomas Price was properly admitted at trial by the district court. Each item contested by Price was either "intrinsic" to the crime charged or properly covered as "extrinsic" evidence under Rule 404(b). Any prejudice to Price that may have otherwise occurred as a result of the district court's admission of this evidence was obviated by the district court's repeated cautionary instructions concerning its limited use. Thus, any error was therefore harmless beyond a reasonable doubt and in no way warrants a reversal. See United States v. Kenny, 973 F.2d 339, 344 (4th Cir. 1992).

> 2. Evidence at Trial Supporting the Guilt of Thomas Price Was Overwhelming and the Trial Court Properly Denied the Defendant's Rule 29 Motion for a Judgment of Acquittal.

The standard for determining a Rule 29 motion is established in Jackson v. Virginia, 443 U.S. 307 (1970). In that case, the Supreme Court stated that the question to be asked is whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt." Id. at 307. In order to prevail,

8

the defendant must show that even when viewed in a light most favorable to the government, that NO rational juror could have found the defendant guilty beyond a reasonable doubt on his evidence. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Additional elements to the analysis include a requirement that the court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." Id. at 1021; see also Jackson v. Virginia, 443 U.S. 307, 319 (1979); Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Campbell , 977 F.2d 854 (4th Cir. 1992).

It is also well established that the uncorroborated testimony of a single witness may be sufficient to survive a Rule 29 motion. United States v. Arrington, 719 F.2d 701, 705 (4th Cir. 1983), cert. denied, 465 U.S. 1028 (1984). This is true even when the single witness happens to have been the defendant's former accomplice in crime. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984).

The evidence before the trial court clearly meets the standard articulated above. The government alleged a violation of Title 18 United States Code Section 876, the "threat by mail" statute. The elements of the offense are: (1) the defendant caused a letter to be written containing a threat; (2) an ordinary, reasonable recipient who is familiar with the context would interpret it as a threat; (3)  at the time the defendant caused the letter to be mailed, he had the intent to threaten the recipient; (4) the defendant caused the letter to be forwarded by United States mail; and (5) the defendant acted willfully and knowingly.

The previously articulated evidence underlying the present charge was substantial. Heather Price testified that Thomas Price had severely beaten her in September 1994 and that he was ultimately convicted on several serious state offenses and sentenced to 24 years of imprisonment. Heather Price also testified to Thomas Price's predilection for violence and abuse against her, as evidenced by him pointing a gun to her head and threatening to kill her; by his numerous threats to her over the telephone; and by the language imbedded in several letters he had sent to various persons including Janice Snead Watkins and by Kim Teeter.

9

Heather Price also testified to the jury about the particulars of the letter which is the origin of this case. Behind the sheen of a woman's handwriting Heather Price recognized in the letter the handiwork of Thomas Price. She recognized Thomas Price through the use of the word "slut"; the uniqueness of the expressions "God forgives, I don't" and "God forgives, Tommy don't"; "Paybacks are hell, and you have hell to pay"; and the unusual quotation-like symbols that acted as a signature at the end of the letter. Heather Price testified that upon reading the letter one single time, she knew it was from Thomas Price. Given the dark history of violence, abuse, and continued threats which has plagued the relationship between Thomas Price and Heather Price, it requires neither imagination nor foresight to understand that any reasonable recipient in Heather Price's shoes would have indeed felt threatened by the letter.

The testimony of Janice Snead Watkins was equally as powerful as that of Heather Price. Her hostility to the government and her unwillingness to testify initially made her testimony even more compelling. Snead told the jury about meeting Thomas Price and developing a relationship with him. She also told the jury about how they continued their relationship through correspondence after they were separated within the North Carolina Department of Correction system. Perhaps most tellingly, Snead told the jury how Thomas Price provided the language that was to be used in the letter and directed her to copy it over and mail it to Heather Price. Finally, Snead told the jury that she followed these instructions and apprised Thomas Price that she had done so by using the language "it is done" in a subsequent letter to him.

It is important to point out that the testimony of Heather Price and Janice Snead Watkins was not free-standing. Rather, it was conclusively corroborated by the testimony of other witnesses, including Deputy Scott Bass, Ramona Taylor and Kim Teeter.

In short, the evidence presented against Thomas Price was compelling and overwhelming. The jury, which deliberated only a short time, also thought so. It is self evident, therefore, that a rational trier of fact could find proof of Thomas Price's guilt beyond a reasonable doubt from this evidence. Accordingly, Price falls far short of meeting the

10

standard governing review under Rule 29 and the Court finds that the district court properly denied the defendant's Rule 29 motion at trial.

> 3. The Trial Court Properly Compelled the Testimony of an Immunized Witness and Then in Light of Her Continuing Hostility, Properly Allowed the Government to Question Her Pursuant to Rule 611(c).

Thomas Price contends that the government's questioning of Janice Snead Watkins was improper because the court compelled her to testify and permitted the government to ask her leading questions pursuant to Rule 611(c). The standard governing review of trial court rulings under the Federal Rules of Evidence is the `abuse of discretion' standard. United States v. Nutter, 412 F.2d 178 (9th Cir.), cert. denied, 397 U.S. 927 (1969). In order to prevail on this issue, therefore, Price must show that the district court committed an abuse of its discretion in its handling of this feature of the trial.

Among the arguments offered by Thomas Price the Court is unable to find a single shred of reasoning which could show in any way that the district court's handling of Snead comprised an abuse of discretion. In regards to the compulsion of Snead's testimony, the trial court acted properly. Snead announced early in her testimony that she would not testify against Price. Outside the presence of the jury, the government formally extended immunity to Snead and moved on that basis that her testimony be compelled. The Supreme Court has held that the government can compel testimony from an unwilling witness who invokes the Fifth Amendment privilege by conferring immunity. Kastigar v. United States, 406 U.S. 441 (1972).

In regards to defendant's objections to the leading questions put to Snead under Rule 611(c), the district court properly allowed this type of questioning because Snead repeatedly gave answers which turned out to be untrue, and whenever possible, gave answers designed to be deceptive. Rule 611(c) states that "when a party calls a hostile witness, an adverse party, or a witness identified with and adverse party, interrogation may be by leading questions." Fed. R. Evid. 611(c). The record supports no finding whatsoever of "abuse of discretion" and accordingly, the district court's rulings are correct.

11

4. The Trial Court Correctly Sentenced the Defendant as a "Career Offender" under Guidelines Section 4B1.1.

The final contention raised by Thomas Price is that he was improperly sentenced as a "Career Offender" for the purposes of sentencing under the United States Sentencing Guidelines. Price argues (1) that his prior conviction for attempted kidnaping should not be counted because at age 17 he was sentenced as a Committed Youthful Offender; (2) that this underlying conviction for causing the mailing of a threatening communication is not a crime of violence; and (3) that even if he did qualify as a Career Offender, the trial court should have departed downward because "Career Offender" status overstates his criminal history.

Each of these arguments lacks merit. The amount of deference due a sentencing judge's application of the Guidelines depends on the case: if the issue is a factual one, this Court should apply the "clearly erroneous" standard; if the issue is one regarding a legal interpretation of the Guidelines, the standard is akin to de novo review. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). The Court lacks jurisdiction to consider defendant's claim that the trial court failed to depart downward. United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.), cert. denied, 498 U.S. 819 (1990).

"Career Offender" is defined in Section 4B.1. of the Guidelines as follows:

> A defendant is a career offender if (1) the defendant is at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Thomas Price fits this definition in three principal ways. First, he was more than eighteen years of age when he committed the instant offense; second, the instant conviction is for a crime of violence because it involved "the use, attempted use, or threatened use" of violence; and third, the two prior felonies on the Price's record -- the

12

1987 attempted kidnaping and the 1995 assault with a deadly weapon -- constitute felony crimes of violence.

The fact that Price was sentenced as a Committed Youthful Offender has no bearing at all on his status as a Career Offender under the Guidelines. The Guidelines require that a qualifying conviction be an "adult . . . conviction." The Guidelines also state, however, that "a conviction for an offense committed prior to the age of eighteen is an adult conviction <u>if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted</u>. U.S.S.G. 4B1.2, Application Note 3. Under North Carolina law, an adult for purposes of the criminal justice system is a person who is 16 or older at the time of the offense -- thereby qualifying Price as an adult for purposes of the Guidelines.

Price also asserts that the instant offense is not a felony crime of violence. The statute under which the prosecution was brought, however, (18 U.S.C. § 876) reads as follows:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and <u>containing any threat to injure the person of the addressee or of another</u>, shall be fined under this title or imprisoned not more than five years, or both. (Emphasis added).

The facts and circumstances of this case unequivocally prove that this letter was indeed a threat of violence, cast upon an individual who had suffered years of grotesque abuse by its author, and created for the sole purpose of inciting fear and distress in its recipient. The facts show further that the mailing of this letter was met by the very reactions that it sought; by her own testimony, Heather Price became "very scared" and apprehensive when she read the letter. For these reasons, the mailing of this letter constitutes a felony crime of violence.

Finally, it is well established that the district court's decision not to depart downward is not appealable. <u>United States v. Dorsey</u>, 61 F.3d 260, 263 (4th Cir.), <u>cert. denied</u>, 133 L.Ed.2d 682 (1995); <u>United</u>

13

States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.), cert. denied, 498 U.S. 819 (1990). The district court's refusal to exercise its discretion to depart downward, therefore, is not reviewable.

CONCLUSION

For the reasons provided above, this Court affirms the conviction and sentence imposed upon the defendant in all respects.

AFFIRMED

14